UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No.

| | |
|---|---|
| JASMINE MADJLESSI,<br><br>    Plaintiff,<br><br>v.<br><br>QUEENS UNIVERSITY OF CHARLOTTE,<br><br>    Defendant. | **COMPLAINT**<br><br>[JURY TRIAL DEMANDED] |

Plaintiff, by and through undersigned counsel, complaining of Defendant in this action arising out of the violation of Plaintiff's rights under Title IX of the Education Amendment of 1972, as amended, 20 U.S.C. § 1681(a) ("Title IX"), alleges the following.

**Parties**

1. Plaintiff is a citizen and resident of Mecklenburg County, North Carolina.

2. Defendant Queens University of Charlotte ("Queens University") is a private university in Charlotte, North Carolina, that receives federal funding and is subject to Title IX. Queens University's campus comprises approximately 95 acres in Charlotte, North Carolina, and it has fewer than 2,000 full-time undergraduate students.

**Jurisdiction & Venue**

3. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims in this action arise under federal law.

4. The Court has jurisdiction over Queens University pursuant to N.C. Gen. Stat. § 1-75.1 *et seq.* and as a result of Queens University's continuous and systematic presence in this State.

5. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

**Facts**

6. At all times relevant to this action, Plaintiff has been enrolled as an undergraduate student at Queens University.

7. On September 12, 2018, Plaintiff told Queens University's Title IX Coordinator that a male undergraduate student at Queens University ("John Doe")—Plaintiff's ex-boyfriend—forced her to have non-consensual sexual intercourse on three separate occasions, including twice on April 1, 2018, and once on May 27, 2018. Plaintiff also reported that John Doe had sexually assaulted her on three separate occasions, including on April 26, 2018, May 26 or 27, 2018, and August 3, 2018.

8. On the basis of Plaintiff's report, the Title IX Coordinator commenced an investigation.

9. The Title IX Coordinator told Plaintiff that the investigation would take 60 days.

10. Ultimately, the investigation took approximately 90 days.

11. During the 90-day investigation into Plaintiff's report, Queens University did not:

   a. Change John Doe's housing assignment (John Doe continued to live in campus housing);

   b. Change John Doe or Plaintiff's class schedule;

   c. Limit John Doe's access to Queens University's campus;

   d. Limit John Doe's ability to participate in student activities on campus; or

   e. Advise Plaintiff that she had the right to request that Queens University take one or more of the above interim measures pending the conclusion of its investigation.

12. As a result, Plaintiff continued to see John Doe on campus during the course of her normal day-to-day student activities, including but not limited to going to class or participating in student clubs, would see John Doe on campus.

13. These instances in which Plaintiff saw John Doe on campus caused Plaintiff to suffer extreme emotional distress, including the onset of severe depression and anxiety.

14. On or around November 11, 2018, as a direct and proximate result of being forced to see her attacker on a routine basis, Plaintiff decided to harm herself. Plaintiff cut both of her arms.

15. Plaintiff's friend reported Plaintiff's self-injury to campus police.

16. Campus police reported Plaintiff's self-injury to the Title IX Coordinator or someone else in Queens University's Title IX office.

17. On or around November 12, 2018, two employees of Queens University in the Title IX office, called Plaintiff into a meeting and told Plaintiff that she could either voluntarily commit herself or that they would call Plaintiff's parents and make arrangements to have Plaintiff involuntarily committed. They told Plaintiff they would give her one day to consider her options.

18. On or around November 13, 2018, Plaintiff checked herself into a hospital.

19. When it finally concluded its investigation, Queens University found John Doe responsible for two acts of sexual assault and two acts of nonconsensual sexual intercourse.

20. As a result of its findings, Queens University "dismissed" John Doe. Per Queens University's Sexual Misconduct and Intimate Partner Violence Policy, "dismissal" means separation from Queens University "for a period of time (between two and four semesters, not including summer). Such separation prohibits attendance at any class, social event or other function or visiting University grounds or buildings unless by written permission. An individual

wishing to resume studies after having been dismissed must reapply for admission to the University."

21. Queens University upheld its determinations following John Doe's appeal from the investigation's initial determination.

**Claim I – Violation of Title IX**

22. Plaintiff incorporates each and every one of the above allegations herein by reference.

23. Queens University receives federal funding.

24. Queens University is subject to the requirements of Title IX.

25. Plaintiff suffered harassment because of her sex that was so severe, pervasive, and objectively offensive that it deprived her of access to educational opportunities.

26. Queens University knew of such harassment at least as of the date of Plaintiff's report to its Title IX Coordinator.

27. Queens University knew or should have known that due to the nature of that institution and, specifically, its enrollment and geographic size, that unless and until Queens University took interim precautionary measures, Plaintiff would continue to be forced to see and be in near proximity with John Doe around campus, including in her ordinary, day-to-day activities, like going to class, studying at the library, or participating in student activities.

28. Queens University knew or should have known that such continued exposure to John Doe would have an extreme negative impact on Plaintiff and her emotional state so as to deprive her of access to educational opportunities.

29. Queens University had the power and ability to take interim measures during the course of its investigation to separate John Doe and Plaintiff so as to ensure that Plaintiff would

not be forced to see or interact with John Doe in the course of her ordinary day-to-day activities, but Queens University took no such measures.

30. As a direct and proximate result of Queens University's failure to take such actions, Plaintiff was deprived of educational opportunities in at least the following ways:

    a. Plaintiff developed severe depression, anxiety, and other mental and emotional symptoms that had the effect of ostracizing Plaintiff from the student body and preventing her full participation in student extra-curricular and curricular activities. Plaintiff continues to suffer such severe emotional distress.

    b. As a further result of such severe depression, anxiety, and other mental and emotional symptoms, Plaintiff harmed herself and, instead of offering aid to Plaintiff through use of its powers to take interim measures against John Doe, Queens University threatened Plaintiff with involuntary commitment.

    c. Plaintiff hospitalized herself for several days and, during that time and the remainder of her recuperation, Plaintiff could not attend class, study, or otherwise perform her regular schoolwork.

31. Queens University's knowledge—actual or constructive—of Plaintiff's plight, and its deliberate or reckless indifference to that plight, constitutes a violation of Title IX.

32. As a direct and proximate result of such violation, Plaintiff has incurred medical expenses and has suffered other damages in an amount to be determined at trial.

### Claim II – Negligent Infliction of Emotional Distress

33. Plaintiff incorporates each and every one of the above allegations herein by reference.

- 5 -
Case 3:20-cv-00029-RJC-DSC   Document 1   Filed 01/15/20   Page 5 of 7

34. Queens University negligently failed to provide Plaintiff with a safe school environment by failing to take action—after it acquired actual knowledge of John Doe's conduct—to ameliorate the effect of such conduct so as to provide Plaintiff with the safe school environment that Title IX guarantees to her.

35. It was reasonably foreseeable that Queens University's failure to take any interim action to limit John Doe's access to campus, to alter his course schedule, or to otherwise mitigate the risk that Plaintiff and John Doe would see each other on a routine basis, would cause Plaintiff to suffer severe emotional distress.

36. Such failure did, in fact, cause Plaintiff to suffer severe emotional distress, including the onset of severe depression and anxiety that led Plaintiff to harm herself and that otherwise had an extreme disruptive impact on Plaintiff's life.

37. Plaintiff is, therefore, entitled to recover damages for such severe emotional distress in an amount to be determined at trial.

**Prayer for Relief**

Wherefore, Plaintiff respectfully prays the Court award her the following relief as against Queens University:

1. Trial by jury as to all issues so triable.

2. An order enjoining further violations of Title IX, at least with respect to this Plaintiff.

3. Damages in an amount to be determined at trial.

4. Pre- and post-judgment interest on any award of damages to the extent the law allows.

5. Plaintiff's reasonable attorney's fees, to the extent the law allows.

6. Costs.

7. Any other relief the Court deems just and proper.

This 15th day of January, 2020.

Respectfully submitted,

**WEAVER, BENNETT & BLAND, P.A.**

By: /s/ Bo Caudill
Bo Caudill
NC Bar No. 45104
Katelin E. Taylor
NC Bar No. 51024
196 N. Trade St.
Matthews, NC 28105
bcaudill@wbbatty.com
ktaylor@wbbatty.com
Tel: (704) 844-1400
Fax: (704) 845-1503
*Counsel for Plaintiff*